**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**KIMBERLY F.,**

     **Plaintiff,**

**vs.**                               **CIVIL ACTION NO. 2:22-CV-00365**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

     This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered September 1, 2022 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is Plaintiff's Brief in Support of Complaint (ECF No. 14) and Defendant's Brief in Support of Defendant's Decision (ECF No. 15).

     Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** Plaintiff's request for remand (ECF No. 14), **DENY** Defendant's request to affirm the final decision (ECF No. 15); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Commissioner for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for Title II benefits in March 2020 alleging disability beginning November 1, 2019[1] due to Crohn's disease, high blood pressure, diverticulitis, stomach ulcers, Cushing's syndrome, and high cholesterol. (Tr. at 11, 240, 276) Her claim was initially denied on October 19, 2020 (Tr. at 101-111) and again upon reconsideration on April 21, 2021 (Tr. at 113-119). Thereafter, she filed a written request for hearing on May 20, 2021 (Tr. at 120-121).

An administrative hearing was held on March 14, 2022 before the Honorable Valerie A. Bawolek, Administrative Law Judge ("ALJ"). (Tr. at 37-60) On May 4, 2022, the ALJ entered an unfavorable decision. (Tr. at 8-31) On May 27, 2022, Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 369-371) The ALJ's decision became the final decision of the Commissioner on June 8, 2022 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On August 30, 2022, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) Defendant (hereinafter referred to as "the Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 8, 9) Subsequently, the Plaintiff filed her Brief in Support of Complaint (ECF No. 14), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 15), and finally, the Plaintiff filed her Reply Brief reiterating her arguments in support of remand (ECF No. 16). Consequently, this matter is fully briefed and ready for resolution.

---

[1] The Plaintiff indicated her last day working was on March 6, 2020 (Tr. at 276), however, the record showed her earnings between her alleged onset date through her last day of work did not establish substantial gainful activity (Tr. at 13).

**Plaintiff's Background**

The Plaintiff was 49 years old as of the alleged onset date, a "younger person", but then changed age category to a "person closely approaching advanced age" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), (d). (Tr. at 23) She has a limited education, having completed schooling through the eleventh grade, and last worked in the food service industry, decorating cakes at Dairy Queen. (Tr. at 277, 298)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). This Section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision

must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ found the Plaintiff met the insured status requirements through March 31, 2025. (Tr. at 13, Finding No. 1) Next, the ALJ determined that she also satisfied the first inquiry because she had not engaged in substantial gainful activity since November 1, 2019, the alleged onset date. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff suffered from the following severe impairments: Crohn's disease; degenerative joint disease (DJD)/osteoarthritis (OA) of the hips; degenerative disc disease (DDD) of the lumbar spine; obstructive sleep apnea (OSA); restrictive lung disease; bilateral hearing loss; obesity; and class I congestive heart failure. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15, Finding No. 4) The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except

she can lift/carry 20 pounds occasionally and 10 pounds frequently; can sit 6 of 8 hours, and can stand and/or walk a combined total of 6 of 8 hours. She can occasionally climb stairs and ramps, bend/stoop, crouch, kneel, and crawl. She can perform prolonged balancing less than occasionally. She can never climb ladders, ropes, or scaffolds. She must avoid unprotected heights and moving mechanical parts, temperature extremes, and concentrated exposure to respiratory irritants and allergens. She requires a work environment with no louder than a moderate (office type) noise level.

(Tr. at 17, Finding No. 5)

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. (Tr. at 23, Finding No. 6) However, at step five, the ALJ found that based on her age, education,

past relevant work and RFC, the Plaintiff is capable of performing other jobs in the national economy. (Tr. at 23-24, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability since November 1, 2019 through the date of the decision. (Tr. at 25, Finding No. 11)

**<u>Plaintiff's Challenges to the Commissioner's Decision</u>**

The Plaintiff has alleged error only with respect to the ALJ's findings regarding her Crohn's disease and associated symptoms. Despite finding the Plaintiff's Crohn's disease a severe impairment, the ALJ failed to account for the Plaintiff's frequent need to use the bathroom in the RFC assessment; the Plaintiff has complained about diarrhea and having numerous bathroom breaks throughout the day, but the ALJ never mentioned. (ECF No. 14 at 5-6) Additionally, the Plaintiff argues that the ALJ's evaluation of the intensity, persistence, and limiting effects of her Crohn's symptoms on her functional limitations did not comply with Social Security Ruling ("SSR") 16-3p and Section 1529 – instead, the ALJ focused on the lack of objective findings, in spite of the Plaintiff's repeated complaints of diarrhea and frequent bathroom breaks. (<u>Id</u>. at 7-10) The Plaintiff argues the final decision is not supported by substantial evidence and asks the Court to remand this matter. (<u>Id</u>. at 16)

In response, the Commissioner contends that the ALJ actually did consider the Plaintiff's limitations as they related to her Crohn's disease, finding that she did not require additional bathroom breaks beyond those inherently occurring every two hours during a workday; further, the record contains no opinions regarding her functional limitations from the Plaintiff's own treating physicians, including her gastroenterologist, and no medical experts opined she had greater restrictions with respect to her bathroom access. (ECF No. 15 at 7-10) The ALJ also

appropriately evaluated the Plaintiff's subjective statements against the overall evidence of record, and articulated her reasons for her conclusions in compliance with legal standards. (Id. at 10-14) The Commissioner argues the final decision is supported by the substantial evidence and asks this Court to affirm. (Id. at 14)

In reply, the Plaintiff reiterates her contention that the ALJ's decision is not supported by substantial evidence because the RFC failed to account for her limitations as related to Crohn's disease and the ALJ failed to properly evaluate her subjective complaints related to her Crohn's disease – specifically those limitations concerning the Plaintiff's frequent diarrhea and pain, as well as her frequent trips to the bathroom. (ECF No. 16)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

From February 19-21, 2020, the Plaintiff was admitted to the emergency room due to abdominal pain and increased diarrhea. (Tr. at 1208-1229) She reported having pain under her ribs on the right side and that she chronically has this pain at least once daily for years that normally improves with a bowel movement but the pain persisted (Tr. at 1222). Prior to that, she stated her last flare up was "several years ago" (Tr. at 1216, 1222). The Plaintiff was not on any medications for her Crohn's disease at the time of her visit to the emergency room and had not been in years (Tr. at 1222). Examinations revealed abdominal tenderness (Tr. at 1210, 1218, 1224). CT showed chronic wall thickening of the distal and terminal ileum consistent with her history of Crohn's

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for Plaintiff's Crohn's disease.

disease, although no bowel obstruction (Tr. at 1214). She was discharged and scheduled for a colonoscopy (Tr. at 1232).

A CT performed on February 24, 2020 again revealed wall thickening of the terminal ileum up to the level of the ileocecal valve with minor narrowing of the lumen which likely represents active versus long-standing Crohn's disease (Tr. at 1175-1176). She had an emergency room visit on February 25 due to right upper quadrant abdominal pain (Tr. at 1152). Physical exam confirmed abdominal tenderness (Tr. at 1154). She returned to the emergency room on March 8 due to abdominal pain and chronic diarrhea (Tr. at 1089). Physical exam showed right upper quadrant abdominal tenderness (Tr. at 1091). CT confirmed nonspecific inflammation of the bowels consistent with Crohn's disease (Tr. at 1095). She had another emergency room visit on March 9 due to abdominal pain and was assessed with Crohn's disease (Tr. at 1059, 1063). Exam revealed left upper abdominal tenderness without rebound, guarding, or rigidity (Tr. at 1061). CT performed on March 9 showed mesenteric inflammatory changes and nonspecific prominent fluid filed loops of bowel that can be seen in diarrhea and inflammatory bowel disease such as Crohn's disease (Tr. at 975-976). An examination on March 11 showed abdominal tenderness (Tr. at 1026). On March 20, 2020, an esophagogastroduodenoscopy (EGD) showed bowel retention, bowel gastritis, and duodenitis (Tr. at 993). Thereafter, studies of the abdomen, esophagus, stomach, and colon were suggestive of Crohn's disease with varying periods of active and inactive inflammation (see, e.g., Tr. at 965, 1006, 1150, 1186, 1214, 2209).

In May 2020, the Plaintiff presented again to the emergency room with abdominal pain; CT scanning revealed nonspecific changes consistent with Crohn's disease (Tr. at 1092). She was discharged with Flagyl and a prednisone burst and advised to follow up with her gastroenterologist (Tr. at 1092). Soon thereafter, she returned to the emergency room for shortness of breath/dyspnea,

reporting her history of Crohn's disease, although it was noted that she was afebrile, which is not consistent with a severe Crohn's flare or sepsis from diverticulitis (Tr. at 1025-1026).

On June 7, 2020 the Plaintiff returned to the emergency room due to right-sided abdominal pain (Tr. at 951). An exam revealed right upper quadrant and right lower quadrant abdominal tenderness (Tr. at 953). CT showed bowel wall thickening involving the distal ileum as well as fatty infiltration of the bowel wall which could be related to chronic inflammatory bowel disease (Tr. at 964-965). She was admitted from June 8-13 due to abdominal pain/diarrhea and diagnosed with Crohn's disease and ileitis (Tr. at 1534, 1553, 1882). An exam showed abdominal tenderness in the right lower quadrant and left lower quadrant (Tr. at 1555, 1568).

During a consultative examination in September 2020, the Plaintiff reported that her ten-year history with Crohn's disease was controlled with her current medications (Tr. at 1660). Examination of her abdomen revealed positive bowel sounds and no tenderness, no organomegaly, no masses, no rebound tenderness, no guarding, and no rigidity (Tr. at 1662).

The record indicates that the Plaintiff did not report a specific frequency of bowel movements ("BMs") in February, March, or April 2020, to her gastroenterologist (Tr. at 1910, 1911, 1912). On June 22, 2020, she reported having eight to ten BMs per day (Tr. at 1906). The Plaintiff did not report such frequency at her June 8, 2020, visit or subsequently at her July 27, 2020, visit (Tr. at 1904, 1908). At her next visit, she stated that her BMs were "much improved," and that she was "doing well overall" (Tr. at 1902).

The Plaintiff had another emergency room visit on November 9, 2020 with complaints of abdominal pain and diarrhea (Tr. at 1715, 1722-1723). She was admitted again from March 29-April 6, 2021 with an acute flare-up of Crohn's (Tr. at 2208). She reported abdominal pain and

increased diarrhea (Tr. at 2190, 2198). Exams showed right upper quadrant abdominal tenderness (Tr. at 2192, 2202). CT revealed extensive wall thickening in the mid to distal ileum consistent with known Crohn's (Tr. at 2205).

In January 2021, she reported diarrhea at least three times per week with ten to fifteen BMs to her gastroenterologist (Tr. at 1900 (failing to specify whether this frequency was per day or week)).

She had another emergency room visit on August 24, 2021 with complaints of right upper quadrant pain (Tr. at 2379). Examination showed abdominal tenderness to palpation (Tr. at 2381). CT confirmed increasing small bowel wall thickness (Tr. at 2406). She was admitted from August 25-28, 2021 due to acute on chronic abdominal pain and Crohn's (Tr. at 2299, 2395). She had abdominal pain and diarrhea (Tr. at 2387). Examinations revealed right upper quadrant abdominal tenderness (Tr. at 2418).

She had a telehealth visit with her gastroenterologist in November 2021 and reported diarrhea, cramping, and nausea for the past week (Tr. at 2562). The record indicates she was approved for Humira but had yet to start this medication (Id.); the physician advised her to start it (Tr. at 2564). As of December 14, 2021, she still had not started the Humira as advised (Tr. at 2565).

She was admitted from January 5-7, 2022 due to a flare up of Crohn's and diagnosed with Crohn's colitis (Tr. at 2507, 2519-2120). She reported abdominal pain, diarrhea, and nausea (Tr. at 2496). Examination showed right flank and right upper quadrant abdominal tenderness (Tr. at 2500). CT revealed mild wall thickening of the distal portion of the ileum in the right lower quadrant which may indicate Crohn's (Tr. at 2527-2528).

On February 16, 2022, she reported to her gastroenterologist that she had started the Humira and noticed "some improvements" as her bowel movements had decreased (Tr. at 2568). She denied abdominal pain, nausea, vomiting, diarrhea, constipation, acid reflux, bloating, excessive gas, melena, hematochezia, hematemesis, and rectal pain (Tr. at 2569).

**The Administrative Hearing:**[3]

David E. Owens, M.D., Medical Expert (ME) Testimony:

The ME noted the Plaintiff's physical impairments, but opined none met or equaled any listing. (Tr. at 42) He testified that they would limit the Plaintiff to no more than light exertional activity, that is, to lifting and carrying 20 pounds occasionally, 10 pounds frequently and sit for six hours in an eight-hour workday. (Id.) The ME further testified standing and walking, combined, would be for six hours total, and as for postural activities, he opined that the Plaintiff could climb ramps and stairs occasionally, and she could bend, stoop, crouch, kneel and crawl occasionally, although climbing ropes, ladders, and scaffolding as well as prolonged balancing would be less than occasional. (Id.) The ME determined the Plaintiff's impairments did not limit her ability to use hand and foot controls, although she would have to avoid unprotected heights and moving mechanical parts because of her dizziness. (Id.) He further testified that because of her lung disease, she would need to avoid temperature extremes and concentrated exposure to respiratory allergens, smoke, dust and fumes. (Id.) She would also need to avoid noisy workplaces, such as factories, because of her hearing loss. (Id.)

Regarding the Plaintiff's Crohn's disease, the ME acknowledged that she suffered from flareups, at least occurring once a year severe enough to warrant an emergency room visit; he

---

[3] Because the Plaintiff's appeal focuses solely on her Crohn's disease and its related limitations, the undersigned omits the testimony and limitations associated with the Plaintiff's psychological impairments. (See Tr. at 45-46)

determined that with her colitis problems, she would have to be admitted for several days in order to treat these conditions. (Tr. at 43) However, the ME testified that "I don't see any reason why she would not be able to complete a workday." (Id.)

Plaintiff's Testimony:

The Plaintiff testified that her Crohn's disease and chronic diarrhea that prevents her from working. (Tr. at 47) She endorsed having pain from this impairment and that she makes 10-15 trips to the bathroom every day; she denies ever having a solid bowel movement; she wears adult diapers sometimes because of accidents. (Id.) She testified that she would wear adult diapers when she has to go out anywhere, probably one a time a week, since she does her grocery shopping online and has her daughter pick it up. (Tr. at 47-48) The Plaintiff said she takes anxiety medication because she is nervous about having an accident. (Tr. at 48) She also stated that she has daily pain from the diarrhea due to the irritation it causes, which, on an average day, she estimated to be around a six on a scale from one to ten. (Tr. at 48-49) Her pain prevents her from doing household chores and driving (which she might do once a month), but she has no issues with personal hygiene, getting dressed or bathing. (Tr. at 49-50)

Steve Gumerman, Ph.D., Vocational Expert (VE) Testimony:

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the VE testified that the individual could not perform her past relevant work, but could perform other light exertional jobs, including sorter, laundry keeper or laundry attendant, and inspector. (Tr. at 53-55) In response to questioning by the Plaintiff's attorney, the VE testified that if the individual were absent once a month, even on a consistent basis, it would become problematic as far as toleration for absenteeism is concerned. (Tr. at 55-

56) The VE opined there probably would not be much of an issue if the individual were absent from work once a year for two to three days. (Tr. at 56) He testified that being off task more than 10% to 15% would not be tolerated, in addition to normal rest and break periods, including using the lavatory. (Id.) The VE agreed that there could be a point were lavatory use could become excessive. (Tr. at 56-57) The VE testified that leaving the work shift early twice a month would be deemed excessive absenteeism, but once a month with an agreeable employer or supervisor may be tolerated; the VE also testified that certain jobs, such as an inspector or sorter, have certain responsibilities by the close of each day, where leaving the shift early could be problematic, whereas other positions that could be possible so long as the work can be made up the following day. (Tr. at 58-59)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

<u>The RFC Assessment:</u>

As an initial matter, it is important to remember that the RFC determination is the most a claimant can do despite her restrictions or limitations, and is *solely* an administrative assessment made by the adjudicator based on all the relevant evidence in the record – no medical opinion necessary. <u>See</u> SSR 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); <u>Felton-Miller v. Astrue</u>, 459 Fed. App'x. 226, 230-231 (4th Cir. 2011). Of interest here, however, is that the ALJ *adopted* the opined RFC limitations given by the ME during his testimony, having found that his opinion was persuasive as it was underpinned by a detailed explanation and that "[h]e had the benefit of reviewing almost the entire record." (Tr. at 22) The only medical evidence the ME did not review was records provided to the ALJ after the hearing that were generated from the Plaintiff's gastroenterologist, although the ALJ found this post-hearing evidence "duplicative in part and did not add any new information about the frequency or intensity of the claimant's diarrhea or other symptoms. Rather, these notes showed improvement in the claimant's conditions." (<u>Id.</u>)[4]

In assessing the Plaintiff's RFC, the ALJ noted that the record showed ongoing treatment for Crohn's disease, including her initial admissions to the emergency room in February and March

---

[4] Among other exhibits cited by the ALJ, she referred to Exhibit 28F (Tr. at 2557-2578), which concerns treatment records for the Plaintiff's Crohn's disease. Notably, the most recent treatment note dated February 16, 2022 indicates "BM decreased" (Tr. at 2568) and that the Plaintiff "denies abdominal pain, nausea, vomiting, diarrhea, constipation, acid reflux, bloating, excessive gas, melena, hematochezia, hematemesis, rectal pain" (Tr. at 2569).

of 2020 due to flare ups. (Tr. at 18, 1208-1244, 1025, 1092) The ALJ observed that "studies of the abdomen, esophagus, stomach, and colon were suggestive of Crohn's disease with varying periods of active and inactive inflammation[.]" (Tr. at 18, 951-965, 970-976, 1025-1044, 1137-1176, 1186, 1208-1244, 1533-1594, 1715-1736, 1853-1898, 1899-1931, 2208)[5] Conversely, the ALJ also noted that during the consultative examination in September 2020, the Plaintiff reported that her Crohn's was controlled with medication, and the examination of her abdomen revealed positive bowel sounds with no tenderness, organomegaly, masses, rebound tenderness, guarding, or rigidity. (Tr. at 18, 1660-1662) In her review of the Plaintiff's gastroenterologist's treatment records, the ALJ further noted the Plaintiff did not report any specific frequency of BMs in February, March, or April 2020. (Tr. at 18-19) However, the Plaintiff reported having as many as 8-10 BMs daily during her June 22, 2020 visit, but made no such reports of frequency during her June 8, 2020 or July 27, 2020 visits. (Tr. at 19, 1906, 1904, 1908) The ALJ noted that at a follow up visit, the Plaintiff reported an improvement in frequency at 4-6 per day (Tr. at 19, 1902), but by January 2021, she reported having diarrhea at least three times per week with 10-15 BMs (Tr. at 19, 1900).[6] As noted *supra*, the Plaintiff did not see her gastroenterologist again until November 2021 with complaints of diarrhea, cramping and nausea, but she had not started her medication, Humira, despite being approved for same – not until February 16, 2022 did the Plaintiff report some improvement from reduced BMs after finally starting Humira as advised. (Tr. at 19, 2562,

---

[5] While the Plaintiff complains that the ALJ did not acknowledge her other emergency room visits beyond the February and March 2020 admissions or repeated findings of abdominal tenderness, as noted *infra*, the ALJ made citations to the medical record that corroborated the Plaintiff's subsequent presentations to the emergency room due to Crohn's flare-ups.

[6] This treatment note does not specify if the Plaintiff reported 10-15 BMs per day or per week, however.

2565, 2568) The undersigned notes that the record does not show a "good reason" why the Plaintiff did not take her prescribed medication despite having been approved "earlier this year." (Tr. at 2562) See 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled[.]")[7]

Ultimately, from the evidence provided by the medical records as well as the Plaintiff's own self-reports, the ALJ determined "[t]he claimant's limitation to light work with additional postural and environmental limitations account for the claimant's Crohn's disease including flare-ups and associated symptoms." (Tr. at 19)

Though it appears that the ALJ considered the evidence of record that both corroborated and detracted from the Plaintiff's claims concerning her need for frequent bathroom breaks, the RFC assessment, including the evaluation of her subjective complaints as they relate to same, does not take into account this particular symptomology or limitations. In other words, while the undersigned notes that the ALJ limited the Plaintiff to light work (which is at the same exertional level as her past relevant work) with certain postural and environmental limitations, there is a notable absence of any explanation for why the ALJ determined the Plaintiff did not need any more or any less that the need for regular bathroom breaks throughout the workday, when the undisputable evidence shows she frequently had issues with diarrhea, to the point that sometimes,

---

[7] As noted *supra*, the Plaintiff was admitted at the Thomas Memorial Hospital emergency room from March 29, 2021 and discharged on April 6, 2021 for an acute flare-up of her Crohn's disease. On the discharge summary, the record indicates "Patient is hesitant to take Humira because of her underlying lung disease . . . encouraged patient to follow-up with her pulmonologist to discuss Humira." (Tr. at 2209; see also Tr. at 2211 ("Please make follow-up appointment with Dr. Waddell to discuss your lung condition and taking Humira.") At the next follow-up appointment with Dr. Waddell on May 18, 2021, he indicated the Plaintiff "[r]eports she was hospitalized for her Crohns in March. They are trying to get Humira approved." (Tr. at 2456) There is no other indication from the treating pulmonologist's treatment notes regarding Humira. In short, the record is devoid of any "good reason" for failing to take Humira as prescribed. See also 20 C.F.R. § 404.1530(c).

she would need to wear adult diapers. In short, the Plaintiff's bathroom requirements are a critical component to determining her ability to function during a workday. The fact remains that the Plaintiff testified that her main problem with returning to work was due to her Crohn's disease: daily diarrhea with numerous trips to the bathroom. (Tr. at 47) As observed by the Fourth Circuit, "[o]bviously, the need to visit the bathroom many times throughout the day impacts one's ability to work." See Dowling v. Commissioner of Social Security Administration, No. 19-2141, 986 F.3d 377, 389 (4th Cir. 2021).[8] The Commissioner is correct that there is no opinion of record, including that of the VE, that suggested the Plaintiff required additional bathroom breaks throughout the workday (See ECF No. 15 at 9), however, it is notable that the VE testified that the hypothetical individual "could . . . use the lavatory if needed" in addition to "normal" rest and break periods, "[b]ut anything beyond that can become a difficulty and it would impact on reliability." (Tr. at 56) Even the Commissioner acknowledges that the VE clarified his testimony that "while it is 'possible' that there is a point 'where the lavatory use could become excessive' . . . "he did not say what that possibility would be." (ECF No. 15 at 9, citing Tr. at 56-57) In the undersigned's view, this unexplored issue leaves a significant question as to how the RFC restriction to "light work with additional postural and environmental limitations" account for the Plaintiff's "Crohn's disease including flare-ups and associated symptoms" (Tr. at 19) In other words, the Court has questions as to how those restrictions really account for this impairment, as there is no explanation

---

[8] In Dowling, the Fourth Circuit noted the RFC "was impacted by her need to work near a restroom and take frequent bathroom breaks[]" given the "considerable evidence in the record demonstrating that Appellant regularly experienced diarrhea and incontinence[]" Id. Indeed, in the case at bar, the Plaintiff testified to having to wear adult diapers in case she were not to make it to a bathroom, and will wear them if she has to go out anywhere, which is why she mostly stays at home. (Tr. at 47-48)

in the written decision as to why the Plaintiff's bathroom use or even proximity to a bathroom was not explored in the RFC assessment.

In sum, this Court is "left to guess about how the ALJ arrived at his conclusions" therefore remand is necessary. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the ALJ's RFC assessment is not supported by substantial evidence.

Evaluation of Symptoms in Disability Claims:

The Plaintiff notes that the RFC assessment is "inextricably intertwined" with the ALJ's evaluation of her subjective complaints as the ALJ's analysis fails to abide by Section 1529(c) because it relies upon the objective medical evidence to discredit the Plaintiff's allegations of symptoms. (ECF No. 14 at 7)

20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

Social Security Ruling 16-3p further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based

on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

It must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See

Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d

433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use

in his . . . analysis as long as there is sufficient development of the record and explanation of the

findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL

2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir.

2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his

decision, but it also provides a thorough examination of the medical evidence." Id.

Recently, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant

medical evidence and cannot simply cherrypick facts that support a finding of nondisability while

ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin.,

983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the

long-standing law in our circuit that disability claimants are entitled to rely exclusively on

subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id.

It is important to recognize that in Arakas, the Court concluded that substantial evidence did not

support the ALJ's finding that the claimant's subjective complaints were inconsistent with her

daily activities because the overall record actually supported her subjective complaints and

demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant,

if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included

misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence

which did not support such a conclusion. Id. For purposes herein, this Court must determine if the

subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for

discounting the Plaintiff's complaints.

After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 18) Regarding the Plaintiff's Crohn's disease, the ALJ made the following findings and conclusions:

> Detracting from the degree of Crohn's impairment alleged by the claimant, included claimed frequency of BMs, for example, are findings within the record such as an absence of substantial weight loss or evidence of malnutrition.[9] Upon examinations, the claimant's abdomen was routinely benign, including for example, soft, non-distended, non-tender, with normal bowel sounds. Diagnostically, there was never evidence of abscess, free fluid or free air, persistent distention, significant surrounding fat stranding, dilated bowel loops, bowel obstruction, persistent and significant ileus, granulomas, dysplasia, or H. pylori.

(Tr. at 19, 936-1532, 1533-1594, 1660-1664, 1899-1931, 2188-2214, 2557-2578)[10]

In Hines v. Barnhart, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

---

[9] As an additional matter, the Plaintiff argues that the ALJ "also rationalized that Plaintiff's lack of weight loss or evidence of malnutrition detracted from her allegations of frequent bowel movements" (ECF No. 14 at 12). While the Plaintiff contends that the ALJ "mischaracterize[s] facts" as a Google search undercuts this finding because some patients with Crohn's disease and ulcerative colitis frequently experience unwanted weight gain due to medication side effects (Id.), the undersigned has also found that a quick Google search also supports the opposite conclusion. https://www.mayoclinic.org/diseases-conditions/crohns-disease/symptoms-causes/syc-20353304 (last visited February 21, 2023). Regardless, the medical record itself supports the ALJ's observation, notwithstanding the lack of specific references to the medical evidence within the written decision (See, e.g., Tr. at 1900, 1902, 1904, 1906, 1908, 1910, 1912, 2458, 2506, 2569, 2573, 2577); it is also noted that the ALJ relied upon this evidence, or lack thereof, at the step three finding that the Plaintiff's Crohn's disease failed to meet Listings criteria (Tr. at 16), a finding corroborated by the ME's testimony.

[10] The ALJ cited numerous exhibits in the record concerning the treatment for the Plaintiff's Crohn's disease, including the periodic flare-ups that brought her back to the emergency room, some records from Thomas Memorial Hospital that even predated her alleged onset date, the consultative examination report, and the Plaintiff's treating gastroenterologist's progress notes.

453 F.3d at 565 n.3 (citing <u>Craig v. Chater</u>, 76 F.3d 585, 595 (4th Cir. 1995)). As noted *supra*, while the ALJ recognized that the Plaintiff had ongoing treatment for her Crohn's disease, and her complaints of chronic diarrhea and pain, it appears that the ALJ primarily relied upon certain objective evidence to discount these complaints. Indeed, the record is replete with the Plaintiff's ongoing complaints of diarrhea to her providers, and it is significant that she was admitted to the emergency room on multiple occasions due to abdominal pain and diarrhea – well beyond those two admissions in early 2020 the ALJ acknowledged. To that extent, the ALJ's subjective symptoms analysis is deficient, as it is supported only by those portions from the objective medical evidence that discredits the Plaintiff's allegations of disabling impairments as it related to her Crohn's disease. This is the type of "cherrypicking" the Fourth Circuit warns adjudicators to avoid, as it "improperly increased [the Plaintiff's] burden of proof." <u>Arakas</u>, 983 F.3d. at 96; see also, <u>Shelley C. v. Commissioner and Social Security Administration, *et al*</u>., No. 21-2042 (4th Cir. Feb. 22, 2023).

Accordingly, the undersigned **FINDS** that the ALJ's subjective symptoms analysis failed to comply with the pertinent Regulations and controlling case law and is not based upon substantial evidence.

The undersigned further **FINDS** that the final decision denying the Plaintiff's application for benefits is not supported by the substantial evidence.

<u>**Recommendations for Disposition**</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's request for remand (ECF No. 14), **DENY** the Defendant's request to affirm

(ECF No. 15), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings so that the ALJ may properly assess the Plaintiff's RFC as it relates to restrictions stemming from her Crohn's disease, particularly her need for frequent bathroom breaks and her use of adult diapers, as well as a proper analysis of the Plaintiff's subjective complaints as they relate to Crohn's disease.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: February 23, 2023.

Omar J. Aboulhosn
United States Magistrate Judge